Henry E. SHIELDS, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 4–64–Civ–355.

United States District Court
D. Minnesota,

Fourth Division.

Jan. 25, 1965.

George G. McPartlin, St. Paul, Minn., for petitioner.

Sidney Abramson, Asst. U. S. Atty., Minneapolis, Minn., for respondent.

DEVITT, Chief Judge.

This expression is occasioned by Petitioner Shields's writing the Court several letters following his conviction on March 26, 1964 of certain narcotics law violations. He had pled guilty and was sentenced to the custody of the Attorney General for a period of 8 years. The Court has interpreted his letters as a Petition under 28 U.S.C.A. § 2255.

Although it appeared to the Court from Shields's correspondence that his main complaint was that he had been given too long a sentence as compared with that imposed upon other narcotics violators at the same term of court, the Court directed the return of the prisoner from the United States Penitentiary at Leavenworth, Kansas, so that a hearing could be held as to all of his claimed wrongs.

A full hearing was held on November 16, 1964. George G. McPartlin, attorney at law, St. Paul, Minnesota, a very competent lawyer, was appointed to represent Petitioner. The Court conducted a pretrial hearing in the courtroom with defendant and his counsel present. All of the claimed grievances of the Petitioner were discussed. It was agreed by defendant, his counsel and Sidney P. Abramson, Assistant United States Attorney, that the only issues for decision were:

1. Petitioner's contention that he was illegally arrested and searched.

2. Petitioner's contention that he was threatened and induced to plead guilty by Narcotics Agent Charles Klick and by Raul O. Salazar, Petitioner's previously appointed attorney.

3. Petitioner's statement that the probation report to the Court contained false statements.

4. Petitioner's contention that he was induced to waive preliminary hearing.

The Court filed a pretrial Order fixing these as all of, and the only, issues for detemination.

Subsequently testimony was taken and evidence was introduced by both the Petioner and the Respondent.

FIRST CONTENTION—Petitioner's claim that he was illegally arrested and searched.

 As to this contention, the Court finds that the Petitioner has failed to sustain the burden of proof. And the Court finds that the Petitioner's arrest was proper, and that the search conducted pursuant thereto was legal. It should be observed in this connection, however, that Petitioner's arrest and attendant search are not matters properly cognizable on a hearing under 28 U.S.C.A. § 2255, and are not reviewable on a motion pursuant to Rule 32 of the Federal Rules of Criminal Procedure subsequent to a plea of guilty. Adkins v. United States, 298 F.2d 842, 8th Cir. (1962); United States v. Zavada, 291 F.2d 189, 6th Cir. (1961).

SECOND CONTENTION—The Petitioner was threatened and induced to plead guilty.

 As to this claim, Petitioner has failed to sustain the burden of proof that

he was threatened and induced to plead guilty by Narcotics Agent Charles Klick or by Raul O. Salazar, Petitioner's previous court-appointed attorney.

The transcript of the proceedings at which Petitioner pled guilty on January 23, 1964, reads, in part, as follows:

"DEPUTY CLERK: * * * What is your plea, guilty or not guilty?

"DEFENDANT SHIELDS: Guilty.

"DEPUTY CLERK: The defendant says that his true name is Henry Edward Shields and he enters a plea of guilty to Count 1, Your Honor.

"THE COURT: What did you plead guilty to?

"DEFENDANT SHIELDS: I pleaded guilty to failing to pay tax on the narcotics that I had.

"THE COURT: Failing to pay tax on—

"DEFENDANT SHIELDS: The narcotics that I had.

"THE COURT: Is that true?

"DEFENDANT SHIELDS: Yes, sir.

"THE COURT: Is this plea in accord with your advice, Mr. Salazar?

"MR. SALAZAR: Well, Your Honor, it accords with the various alternatives and explanations that I gave Mr. Shields concerning the charges and it accords with what I told him the likelihood of this matter would be in the event it went to trial. It was his decision, in terms of the various alternatives or likelihoods that I presented to him.

"THE COURT: What's the penalty? Is this two to ten?

"MR. GARD: Yes, the minimum is two and the maximum is 10. I believe this is the first offense, so that would be applicable here. There is also a possible fine of up to $20,000, also.

"THE COURT: Did you understand that?

"DEFENDANT SHIELDS: Yes, I did.

"THE COURT: That when you plead guilty you can be imprisoned for a period of between two years and 10 years and a fine can be imposed upon you of up to—

"MR. GARD: $20,000.

"THE COURT: (Continuing)—$20,000 on this one count alone? You understand that?

"DEFENDANT SHIELDS: Yes.

"THE COURT: And you want to plead guilty to it?

"DEFENDANT SHIELDS: Yes.

"THE COURT: Have you had an opportunity to fully consider the matter that you want to plead guilty to?

"DEFENDANT SHIELDS: Yes, I have.

"THE COURT: Do you want more time to consider it?

"DEFENDANT SHIELDS: No, sir, I don't.

"THE COURT: Do you want to have more time to talk with your lawyer about it?

"DEFENDANT SHIELDS: No, sir.

"THE COURT: Is there anything at all about it that you want to think about more, that you want to ask questions about?

"DEFENDANT SHIELDS: No, sir.

"THE COURT: You are satisfied that you are guilty of this offense, are you?

"DEFENDANT SHIELDS: Yes.

"THE COURT: And you fully understand the possible penalties that might be imposed?

"DEFENDANT SHIELDS: Yes, I do, Your Honor.

"MR. SALAZAR: Your Honor, may I add one more thing?

"THE COURT: Sure.

"MR. SALAZAR: I will more fully like to explain this at the time of sentencing, but one factor on behalf of Mr. Shields that should be taken into consideration is a report which the probation officer to be appointed will receive or should receive concerning Mr. Henry Edward Shields' cooperation with the F.B.I. in connection with helping them, and the connection between the F.B.I. in this case is that the same person that the F.B.I. seeks information on is the same person that allegedly was the informant in this case, and although there is no official way of recommending to the Court what to do in this matter, it was understood by me, as it was told to me by a federal agent, Mr. Thornton, that information that Mr. Shields was helpful would be provided to the probation officer and hopefully that it will reach Your Honor before sentencing.

"THE COURT: You knew about that, Mr. Shields?

"DEFENDANT SHIELDS: Yes.

"THE COURT: Did anybody promise you anything for pleading guilty?

"DEFENDANT SHIELDS: No, sir.

"THE COURT: Was any promise made that you might get a less sentence if you pled guilty?

"DEFENDANT SHIELDS: No, sir.

"THE COURT: You are sure about that?

"DEFENDANT SHIELDS: Positive.

"THE COURT: Very well. That will be taken into consideration. That information will go to the probation officer. So a guilty plea may be entered. The matter is assigned to the probation officer.

"Thank you, Mr. Salazar, for representing this man.

"MR. SALAZAR: You are welcome, Your Honor."

The transcript of the proceedings when Shields was sentenced on March 26, 1964 reads, in part, as follows:

" * * * THE COURT: Now, Mr. Shields, do you have any statement to make before—

"DEFENDANT SHIELDS: No, sir. He covered everything I had to say, Judge, Your Honor.

"THE COURT: The last time you were before me you pled guilty to this offense, didn't you?

"DEFENDANT SHIELDS: Yes, I did.

"THE COURT: And what did you plead guilty to at that time?

"DEFENDANT SHIELDS: For having in possession narcotics and failing to pay the tax on it.

"THE COURT: I guess you pled guilty to Count 1, didn't you?

"MR. ABRAMSON: Yes, sir.

"THE COURT: Count 1 says that on or about the 12th day of December, 1963, at the City of Minneapolis, County of Hennepin, State and District of Minnesota, Fourth Division, one Henry Edward Shields, aka Legs, aka Leon Brown, did purchase and possess narcotic drugs, to-wit: A derivative of opium, said narcotic drug not being in the original stamped container, or from the original stamped container and the appropriate tax paid stamp being absent therefrom, in violation of Title 26, United States Code, Section 4704. That's Count 1. Did you plead guilty to that?

"DEFENDANT SHIELDS: Yes, I did

"THE COURT: And are you guilty of that?

"DEFENDANT SHIELDS: Yes, sir.

"THE COURT: And you had enough opportunity to talk with your lawyer about this whole matter, did you, before you pled?

"DEFENDANT SHIELDS: Yes, I did.

"THE COURT: And today you persist in your plea that you are guilty of that offense?

"DEFENDANT SHIELDS: Yes, sir."

The Court is satisfied after re-reading the transcript of these proceedings and from all of the evidence subsequently received by the Court at the hearings on April 2, 1964 and November 16, 1964 that there is no basis for the contention of Petitioner that he was threatened and induced to plead guilty by Narcotics Agent Klick and by his then attorney, Raul O. Salazar. Mr. Salazar rendered effective and dedicated service to the defendant. He was very conscientious in the performance of his duties. The Court finds as to this issue that the Petitioner's plea of guilty was freely and voluntarily made, and with full understanding of the nature of the charge.

THIRD CONTENTION—False statements in the probation report.

■ As to this third issue, the Petitioner has failed to sustain the burden of proof that the probation report to the Court contained false statements. The Court finds that no false statements were contained in the probation report.

■■ At all events, this contention and the fact that a longer sentence than anticipated was imposed is not a proper subject of review on a motion pursuant to 28 U.S.C. § 2255. Baker v. United States, 334 F.2d 444, 8th Cir. (1964); Verdon v. United States, 296 F.2d 549, 8th Cir. (1961), cert. denied 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811. The alleged false statement in the probation report to which Petitioner takes exception concerns itself with the Petitioner's alleged use of brute tactics in controlling a consignment-credit type of narcotics business in the Twin Cities area. This information garnered by the probation officer from police and narcotics officers conversant with the Petitioner's activities in this area was brought to the attention of the Petitioner at the time of his sentencing in order that the defendant might make comment or afford refutation to the claim. It is the Court's view that the Petitioner's appeal to the Court for relief from his conviction is in reality based on this claimed improper statement about his method of conducting the narcotics business and the longer than anticipated sentence imposed upon him rather than upon any other of the alleged grounds here being considered. Of course, receiving a sentence more severe than anticipated does not afford grounds for vacation of the sentence. Verdon v. United States, supra.

FOURTH CONTENTION—Inducement to waive preliminary hearing.

■ As to this issue, the Court finds that the Petitioner has failed to sustain the burden of proof that he was induced to waive preliminary hearing. The Court finds that the Petitioner was not induced to waive preliminary hearing.

■ At all events, this is not a matter which is a proper subject for review on a motion pursuant to 28 U.S.C.A. § 2255. Hall v. United States, 259 F.2d 430, 8th Cir. (1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680; Swepston v. United States, 289 F.2d 166, 167, 8th Cir. (1961).

It should be added that the Court has received a letter dated January 17, 1965 from the Petitioner now lodged in the Ramsey County, Minnesota, Jail as a federal prisoner, in which, among other things, he states that Mr. George McPartlin, the attorney who represented him at the hearing, has been deficient in the performance of his duties, has not fully and faithfully represented the defendant, entered into a conspiracy with Assistant United States Attorney Sidney

.Abramson and with the Court to keep the Petitioner in jail notwithstanding his claimed innocence, and that he is being kept in jail not because he is guilty of a crime, but because he is a negro.

Mr. McPartlin has been most conscientious in the representation of the Petitioner and has been faithful and diligent in advancing all of Petitioner's contentions and has manifested the highest type of professional conduct. Mr. McPartlin is an attorney of long experience at the Bar and is especially qualified in the handling of criminal cases in the federal courts.

Additionally, the Court observes that the Petitioner was mentally competent at the time of his arraignment, at the time of the entry of his plea, and upon the occasion of each court appearance.

It was apparent to the Court in the early stages of Petitioner's extensive correspondence that unless the defendant was brought back before the Court and afforded an opportunity to assert every ground upon which his claimed improper incarceration was based, repetitive motions for relief would be filed. It was mainly for this reason that the Court directed the personal presence of the Petitioner so that all possible claims could be explored under 28 U.S.C.A. § 2255, under Rules 11, 32(d) and 35 of the Federal Rules of Criminal Procedure, and any possible grounds for a motion for writ of error coram nobis. The Court has extended to the Petitioner a full hearing on every conceivable claim and finds that all such claims are groundless and without any merit.

The foregoing shall constitute the Court's finding of fact and conclusions of law.

It is therefore ordered that the writ of habeas corpus ad testificandum dated November 2, 1964 ordering the appearance of Henry Shields before the Court for hearing, be discharged; that all petitions and motions filed by the defendant be denied, and that the Petitioner be returned to the custody of the Attorney General of the United States for delivery to his place of confinement.